[Cite as *Gabriel v. McBride*, 2026-Ohio-2626.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY  COUNTY

JEREMY GABRIEL, ON BEHALF : 
OF K.G., ET AL., :
 :
    Plaintiff-Appellee, :     Case No. 25CA9
 :
    v. :
 :     <u>DECISION AND JUDGMENT</u>
MICHAEL MCBRIDE, :     <u>ENTRY</u>
 :
    Defendant-Appellant. :

_____
<u>APPEARANCES:</u>

Michael McBride, Melbourne, VIC, Australia, for appellant pro se.

Jeremy Gabriel, Plain City, Ohio, for appellee pro se.

Jayme Hartley Fountain, Pickaway County Prosecutor, Circleville, Ohio.[1]
_____

Smith, P.J.

{¶1} Michael McBride, "appellant," appeals the Decision and Entry filed February 27, 2025 by the Pickaway County Court of Common Pleas which denied appellant's application to seal the record of a civil protection order ("CPO").  Appellant presents two assignments of error challenging the trial court's procedures.  However, based upon our review, we find that

---

[1] While both Jeremy Gabriel and the Pickaway County Prosecutor received notice of service of appellant's brief, neither has elected to file a responsive pleading.

competent credible evidence supports the trial court's Decision and Entry.

As the trial court did not abuse its discretion, both assignments of error are

overruled.  The judgment of the trial court is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

{¶2} The record before us reveals that at one time, appellant was

married to a woman named Tara McBride, n.k.a. Tara Gabriel.  They had

one child, K.M., now known as K.G., born in 2003.[2]  They divorced in 2005.

The record further indicates that in 2008, Jeremy Gabriel, "appellee," was

allowed to adopt K.G.

{¶3} On March 11, 2009, appellee, on behalf of K.G., filed a petition

asking the court to grant a CPO to protect Tara and K.G. from appellant.[3]

On the form where petitioners are asked to "describe the nature and content

of the pattern of conduct that causes you to believe that Respondent will

cause you physical harm or causes (or has caused) mental distress," appellee

attached a one-page description.  This excerpt should give flavor to the

circumstances surrounding the filing of the petition for a CPO.  Appellee

wrote:

> After Tara and Michael [McBride] divorced in
> 2005,  Tara and K.G. moved back to Ohio to be with
> family.  A few months later Michael followed.  Michael

---

[2] Even though K.G. has reached adulthood, we will continue to reference him as "K.G."
[3] The actual form is captioned "Petition for Civil Stalking or Sexually Oriented Offense Protection Order."

had regular visitation with K.G. per the Utah divorce decree but that wasn't enough and Michael initiated legal proceedings to take physical custody away from Tara. Due to Michael's threats and past physical violence of both Tara and K.G., Tara obtained a protection order. Michael knowingly violated that protection order on several occasions. The Whitehall Police Dept. charged Michael for these violations. Jeremy and Tara had been subpoenaed to attend Michael's trial which was on May 22, 2006. While waiting for his case to be recalled for trial Michael left the courthouse and went to K.G.'s daycare and using threats and intimidation was able to take K.G. It was not Michael's day for visitation and he took K.G. without my knowledge or approval. Due to Michael's violent past and unstable mental condition it was taken very seriously and the Whitehall Police Dept. contacted Loudonville Police Dept. (Michael's mother Linda lives there) in Ashland County to be on the lookout for Michael and K.G. Officers in Loudonville had seen them at Linda's house and they began making contact with them. Later that night Michael and Linda cut off any contact and would not cooperate in returning K.G. The Loudonville Police Dept. and Ashland County SWAT team made the decision to enter the house to obtain K.G. When they entered the house at 2 or 3 a.m. Linda confronted them. She would not cooperate and was arrested…They finally found Michael in an attic bedroom laying on top of K.G. with a video camera in one hand and a recording device in the other. He was telling K.G. that the police were there to hurt him…Michael was arrested and charged. During his appeals process he quit showing up for court and warrants were issued for his arrest.

Also attached to the petition was a seven-page Ohio Uniform Incident Report from the Loudonville Police Department, Ashland County, Ohio. The report also contained a supplement containing a notification from the Whitehall Police Department. The petition also attached emails from

appellant to K.G., Tara, and appellee. The tone of the emails may be fairly described as angry and combative. In one email, appellant writes: "I did not want to live in Ohio, but so be it. It is going to be fun razing some hell."

{¶4} The magistrate granted a temporary CPO, effective until March 18, 2009. K.G. and Tara Gabriel were named as protected persons. A full hearing was scheduled for March 18, 2009.

{¶5} Appellant obtained legal counsel and requested continuance of the full hearing. The magistrate continued the protection order and rescheduled the hearing to April 6, 2009. The magistrate's entry states that appellant was incarcerated in Ashland County, Ohio. Appellant's counsel appeared on his behalf.

{¶6} Appellant's counsel requested an order to convey appellant from Ashland County to appear in Pickaway County at the April hearing, or in the alternative, to continue the April date. Both requests were denied. The record indicates that at the April 6, 2009 hearing the magistrate granted a full order, effective for five years, expiring on April 6, 2014. The magistrate found that appellant's conduct caused actual mental distress.

{¶7} Appellant's counsel filed an Objection to the Magistrate's Decision and contemporaneously filed a motion to withdraw as counsel. Counsel also filed a Request for Findings of Fact and Conclusions of Law.

On May 19, 2009, the magistrate filed an Amended Magistrate's decision: Findings of Fact and Conclusions of Law.

{¶8} Appellant subsequently asserted that he was indigent and moved the court that a transcript be provided to him at no cost, or in the alternative, that if a transcript was not provided at no cost, that the court use the Findings of Fact and Conclusions of Law. Appellant's request for a transcript at no cost was denied. On August 27, 2009, the trial court filed its Decision. The trial court found that after independent review of the Magistrate's Decision, the objection was overruled and the trial court adopted the Magistrate's Decision.

{¶9} On October 23, 2009, Appellant filed Respondent's Motion for Dismissal/Termination of Restraining Order /Record of Proceedings/ Correction of Record/Clarification. Branch One requested that the trial court dismiss the underlying case. Branch Two requested the court to fax all court documents required for appeal. Branch Three requested that the trial court order the clerk to "correct the case record several errors exist in preparation for appeal." Branch Four requested clarification of several matters, including "what conduct violated Ohio law." Appellant's motion provided an affidavit in support. On the same date, the trial court denied all branches of the motion.

{¶10} On November 20, 2009, appellant filed a notice of appeal of the trial court's October 23, 2009 decision. The Pickaway County Clerk of Court's website indicates that on January 8, 2010, this Court dismissed the 2009 appeal.

{¶11} On July 19, 2024, appellant filed an Application for Sealing of Record, pursuant to both R.C. 2953.31-2953.61 and the law as stated in *Lloyd v. Thornsberry*, 2021-Ohio-240. The trial court scheduled the matter for a hearing on October 23, 2024. On September 13, 2024, the State of Ohio filed a Memorandum Contra Respondent's Application for Sealing of Record. The matter eventually came on for hearing on February 26, 2025.

{¶12} The Decision and Entry of February 26, 2025 indicates that appellant, appellee, and K.G. attended remotely via Zoom. Appellant's attorney appeared in person. The State of Ohio was represented by the Pickaway County Assistant Prosecutor. At the close of the hearing, the trial court commented that "the subject matter of this protection order certainly has run its course…no violations, no other issues. I appreciate that." Nevertheless, the application to seal was denied. The trial court's decision stated in pertinent part:

> This case concerns a Civil Protection Order that was granted in 2009 and expired in 2014. While there is no explicit statutory authority to seal a Civil Protection Order, the Ohio Supreme Court has held that a "trial court has the

inherent authority to grant an application to expunge and seal a record pertaining to a dissolved CPO in an adult proceeding when unusual and exceptional circumstances exist." *Schussheim v. Schussheim,* 137 Ohio St.3d 133. The State of Ohio objected to the sealing. After hearing testimony from Mr. McBride, Mr. Jeremy Gabriel and K.G. this Court finds that no "unusual or exceptional circumstances exist" and declines to seal this record.

This timely appeal followed.[4]

{¶13} On May 15, 2025, appellant filed a motion for extension of time to file the appellate record, transcript, and initial brief. This court denied the request regarding the appellate record and transcript as moot, in that the record had already been transmitted with the hearing transcript. Appellant was given an extension of time to file his brief.

## ASSIGNMENTS OF ERROR

I.     THE TRIAL COURT ERRED BY DENYING APPELLANT'S APPLICATION TO SEAL THE RECORD WITHOUT HOLDING THE MANDATORY EVIDENTIARY HEARING AND WITHOUT WEIGHING THE PARTIES' INTERESTS AS REQUIRED BY R.C. 2953.32(B).

---

[4] In appellant's Statement, Praecipe and Notice to the Court Reporter, he requested a "corrected record as designated by the undersigned." To the Clerk, appellant instructed: "Please prepare and assemble the full transcript of the hearing held on February 27, 2025, in the trial court, along with a certified copy of the docket and *the provided corrected record, including journal entries. The defendant will not include the modified/falsified entries from the original trial judge and magistrate (2009) as part of the record to support the assignments of error. Do not transmit the record to the clerk of the Court of Appeals of this county for filing until the undersigned delivers the corrected record, free of non-public data and malicious falsification.* Upon receipt of these *corrected* documents, you shall transmit the *corrected* record, along with the complete transcript of the February 27, 2025, proceedings delivered by the undersigned, to the clerk of the Court of Appeals for filing as the record on appeal." (Emphasis added.) In appellant's brief, he states that "the record relayed by the Clerk of Courts is not valid…"

II.     THE      TRIAL      COURT      ABUSED      ITS
        DISCRETION        BY        DENYING        THE
        APPLICATION TO SEAL BASED ON A NON-
        STATUTORY                    "EXCEPTIONAL
        CIRCUMSTANCES"   STANDARD   AND   BY
        ISSUING A CONCLUSORY ORDER DEVOID
        OF FACTUAL FINDINGS.

### Standard of Review

{¶14} A trial court's decision to grant or deny an application to seal criminal records is a matter of judicial discretion. *Wetz v. Pomeroy*, 2014-Ohio-5085, at ¶ 9 (12th Dist.). *See also State v. Jones*, 2026-Ohio-106, at ¶ 28 (7th Dist.); *In re L.B.*, 2024-Ohio-1255, at ¶ 6 (1st Dist.) ("We review a trial court's decision on an application for expungement and sealing for an abuse of discretion."); *State v. Mirkin,* 2022-Ohio-2229, at ¶ 18 (4th Dist.) (If an applicant is eligible under R.C. 2953.32(C)(1)(b)-(e), reviewing court then considers whether the trial court abused its discretion in granting or denying an application to seal).

### Initial Considerations

{¶15} At the outset, we point out that the sections of appellant's brief designated "Statement of the Case" and "Facts" contain many allegations and conclusions which are essentially matters outside of the appellate record. A reviewing court is limited to what transpired in the trial court as reflected in the record made of the proceedings. *See Anderson v. Anderson,* 2017-

Ohio-2827, at fn. 4 (4th Dist.). Matters outside the record cannot be used to demonstrate error. *Id.* And while we generally afford considerable leniency to pro se litigants, this Court is not required to find substance where none exists, or to construct arguments for an appellant. *See generally Carrington v. Beverly,* 2026-Ohio-1293, at ¶ 22 (4th Dist.); *State v. Shamblin,* 2024-Ohio-5315, at ¶ 14 (4th Dist.). We will interpret appellant's assignments of error as best we can.

{¶16} As another initial consideration, appellant points out that appellee did not file any written response or opposition to appellant's motion to seal the record. Appellant contends that therefore, appellee has waived any factual or legal challenges to the sealing criteria. We are mindful that within the Ohio Civil Rules, a moving party does not prevail on Civil R. 56 summary judgment simply because the other party fails to respond. *See U.S. Bank National Association v. Johnson,* 2025-Ohio-4936, at fn.2 (4th Dist.). The law requires that the moving party establish the non-existence of material factual issues even where the non-moving party fails to file a response. *Id.*, citing *Morris v. Ohio Cas. Ins. Co.*, 35 Ohio St.3d 45, 47 (1988). Simply because appellee did not file a written response to the sealing does not convince us that the trial court was required to grant appellant's motion to seal. Thus, appellant's contention that we must grant

reversal in his favor merely because appellee chose not to file a responsive brief is without merit.

{¶17} Appellant also contends that the February 27, 2025 order provided no factual findings or exhibits. Upon review, the trial court record does not reflect that appellant or his counsel at the time made a request, pursuant to Civ.R. 52, for written findings of fact and conclusions of law. Even so, a trial court may in fact substantially comply with Civ.R. 52 if the contents of the opinion, when considered with other parts of the record, form an adequate basis upon which to decide the legal issues presented. *See Southworth v. Southworth*, 2024-Ohio-2950, at fn. 2 (4th Dist.). (Citations omitted.) Upon review, we find that there exists herein an adequate basis for review of the trial court's decision in this matter.

{¶18} Finally, appellant further contends that the case was a miscarriage of justice because he was unable to cross-examine appellee or K.G. in 2009 or 2025.[5] Therefore, he argues there are no facts to support the magistrate/trial court's decision. Again, upon our review, there is nothing in the record to indicate that appellant objected to his inability to cross-examine appellee or K.G. in 2009 or 2025. Neither the assignments of error listed in

---

[5] We perceive this to be a scrivener's error as the hearing on appellant's motion was held on February 26, 2025.

appellant's 2009 appellate filing nor the transcript of the February 2025

hearing contain any objection as to an inability to cross-examine those

persons. Thus, appellant has long since waived this contention and it is now

barred by res judicata. (The doctrine of res judicata bars claims that a

defendant raised or could have raised on a direct appeal.) *See Robson v.*

*Mason,* 2025-Ohio-5385, at ¶ 10 (4th Dist.).

Legal Principles

{¶19} Court records are presumed open to public access. *See* Sup.R.

45(A). Under Sup.R. 45(E), "[a]ny party to a judicial action or proceeding

or other person who is the subject of information in a case document may,

by written motion to the court, request that the court restrict public access to

the information or, if necessary, the entire document." Every court

ultimately has supervisory power over its own records and files. *See Capital*

*One Bank N.A. v. Essex,* 2014-Ohio-4247, at ¶ 12 (2d Dist.), citing *Nixon v.*

*Warner Communications Inc.,* 435 U.S. 589 (1978).

{¶20} " '[E]xpungement is an act of grace created by the state,' and

so is a privilege, not a right." *State v. Simon,* 87 Ohio St.3d 531, 533 (2000),

quoting *State v. Hamilton,* 75 Ohio St.3d 636,649 (1996). Specific statutory

provisions govern the sealing of a record of conviction. *See* R.C. 2953.31

through 2953.61. There is no statutory authorization to expunge and seal

records relating to a CPO in adult proceedings.  *See Capital One Bank*

*United States, N.A. v. Essex,* 2014-Ohio-4247, at ¶ 9 (2d Dist.).

Analysis

{¶21}  Because appellant's assignments of error are interrelated, we consider them jointly.  Under the first assignment of error, Appellant argues that R.C. 2953.32(B) mandates that the courts shall hold a hearing.  He likens the trial court's failure to hold a hearing and "weigh statutory factors" comparable to denying him the right to counsel.  Under the second assignment of error, appellant contends that the trial court invented the "exceptional circumstances" test.

{¶22} We find no merit to appellant's first assignment of error.[6] Appellant cites his entitlement to a hearing to weigh statutory factors as required under R.C. 2953.32(B).  However, the criminal statute cited has no applicability to appellant's application to seal the record.  He did not request sealing of a criminal conviction.  The statute governs only convictions, not protection orders issued in civil matters.

---

[6]Appellant's motion to seal the official records regarding the 2009-2014 CPO was filed on July 19, 2024. Under the version of R.C. 2953.32 in effect at that time, R.C. 2953.32(B)(1)(a) governed the sealing or expungement of a criminal record after conviction. See Am.Sub.H.B. 33, effective October 3, 2023.  Under R.C. 2953.32, a trial court considering an application to seal records of a criminal conviction was required to set the matter for a hearing. This requirement is now set forth in R.C. 2953.32(C).

{¶23} However, appellant did actually have a hearing on his motion to seal on February 26, 2025. Furthermore, inasmuch as appellant also claims denial of due process, we again point out that the trial court conducted a hearing, appellant attended by Zoom, and an attorney attended in person on his behalf. Appellant's counsel argued that there was no public interest to support keeping the records. Counsel pointed out that the CPO was not a conviction, was no longer in effect, and there had been no violations of the CPO. Counsel also argued that future employers or appellant's children might possibly access the records. Appellant was given his day in court and his attorney appears to have argued zealously on his behalf. Based on the foregoing, we find appellant was not denied due process. Accordingly, the first assignment of error is without merit and is hereby overruled.

{¶24} Under the second assignment of error, appellant asserts that the trial court exceeded its authority and abused its discretion by inventing an "exceptional circumstances" test. For the reasons which follow, we disagree with appellant. The trial court correctly relied upon the Supreme Court of Ohio's decision in *Schussheim v. Schussheim,* 2013-Ohio-4529, "*Schussheim II,*" in applying the "exceptional circumstances" analysis and denying the application to seal.

{¶25} In *State ex rel. Parikh v. Berkowitz,* 2024-Ohio-4686, the First

District Court of Appeals more recently explained:

> Importantly, courts have long had inherent authority to seal some or all of the documents in civil cases. *Schussheim v. Schussheim,* 2013-Ohio-4529, ¶ 16. Courts have this power because "every court ultimately has supervisory power over its own records and files." *Capital One Bank United States, N.A. v. Essex,* 2014-Ohio-4247, ¶ 12 (2d Dist.). Sup.R. 45(E) expands upon courts' inherent authority to balance the competing interests of public access and constitutional privacy. In the civil context, Ohio courts possess this limited inherent authority to seal records, whether individual case documents or an entire case, where "unusual and exceptional circumstances" exist, and the interests of the applicant outweigh the legitimate interest of the government to maintain the record.

*Berkowitz,* at ¶ 39.

{¶26} Similar to the matter within, *Schussheim* involved a request to

expunge and seal the record of proceedings for a civil protection order

(CPO) obtained by the wife.  The similarity ends with that fact because in

*Schussheim*, by the time of the application for expungement and sealing of

record was considered by the trial court, *both* parties asserted that

expungement was in the best interest of the wife and children.  *Id.* at ¶ 6.

Yet, the trial court denied the application to expunge and seal the record of

the CPO and the Twelfth District Court of Appeals affirmed.  *See*

*Schussheim v. Schussheim*, 2012-Ohio-2573 "*Schussheim I.*"

{¶27} On appeal to the Supreme Court of Ohio, the Court cited

*Pepper Pike v. Doe*, 66 Ohio St.2d 374 (1981), which had recognized that

courts have inherent authority to expunge and seal criminal records in

"unusual and exceptional circumstances" based on the constitutional right to

privacy.  Extending the holding in *Pepper Pike*, the majority found that

although there was no statutory authorization to expunge and seal records

relating to a dissolved CPO in adult proceedings, a court has the inherent

authority to do so in unusual and exceptional circumstances.  The Supreme

Court extended the holding in *Pepper Pike* to civil matters where the

circumstances warrant such relief when it concluded:

> The inherent authority of a court to expunge and seal a record does not turn on whether a proceeding is criminal or civil. Rather, the determination is whether "unusual and exceptional circumstances" exist and whether the interests of the applicant outweigh the legitimate interest of the government to maintain the record.

*See Schussheim II,* at ¶ 16.[7] [8]

---

[7] Several justices dissented in *Schussheim II*, citing the narrow circumstances in which the legislature has expressly approved expungement of civil records (in juvenile proceedings, R.C. 2151.34(E)(6)); distinctions between *Schussheim* and *Pepper Pike*; and the lack of "unusual and exceptional circumstances."  The  *Capital One* court commented that "[a]lthough we may share some of these concerns, *Schussheim* unequivocally held that expungement and sealing of a record may be appropriate in civil cases."  *Capital One*, at ¶ 13.

[8] We are unsure how *Lloyd v. Thornsbery*, 2021-Ohio-240 (11th Dist.) supports appellant's position.  There the appellate court, by contrast, did affirm a decision which granted a motion to seal the record.  However, *Thornsbery* also recognized that *Schussheim II* is the controlling authority.

{¶28} After appellant filed his motion to seal, the State of Ohio filed a memorandum contra. Within the memorandum contra, the State acknowledged that it had been unable to contact appellee or K.G. However, the State argued:

> The State of Ohio is of the understanding that…K.G. was a minor child who had been the subject of a step-parent adoption in 2008. Petitioner, Jeremy Gabriel was the adoptive father. Respondent, Michael McBride, was the biological father whose rights had been terminated in Pickaway County Probate Court Case No. 2008-5010. The Protection Order indicates that Respondent had engaged in a "pattern of conduct that causes emotional distress to Petitioner including emails and telephone calls threatening to take the child from school, threatening to "raze" [sic] hell in Ohio." See Findings of Fact, Order of Protection, (Exhibit A.)…

{¶29} At the Zoom hearing, the trial court gave appellee and K.G. the opportunity to speak. Appellee pointed out that appellant had attempted to seal his cases in other jurisdictions without success, so those records were still available for review. He also pointed to appellant's lack of remorse for the incidents of many years ago. K.G. also addressed appellant's lack of accountability for previous actions.

{¶30} Appellant argues that there was no sworn evidence presented at the hearing. First, we note that the Supreme Court of Ohio has held that sealing proceedings are non-adversarial. *See State v. A.L.H.*, 2023-Ohio-4789, at ¶ 21, citing *State v. Hamilton*, 75 Ohio St.3d 636, 640 (1996). As

such, the Rules of Evidence do not apply. *Id*., citing *State v. Simon*, 87 Ohio St.3d 531, 533 (2000). Furthermore, when a party fails to request findings of fact and conclusions of law, the reviewing court must presume the trial court applied the law correctly. *See Estate of Ryan v. Brookdale Zanesville*, 2026-Ohio-411, at ¶ 18 (5th Dist.); *Matter of K.C.,* 2023-Ohio-4118 (4th Dist.). While appellee and the prosecutor did not present sworn testimony, we trust that in reaching its decision the trial court was persuaded by the arguments asserted at the hearing and a review of the pleadings filed in the trial court record to properly apply the law.

{¶31} Appellant claims that the trial court's finding that "no unusual or exceptional circumstances exist" was in error. We look to other appellate decisions for guidance. In *Wetz v. Pomeroy, supra*, the appellant argued there was no compelling reason for the trial court to retain the records of repeated petitions and dismissals in the case, and that appellant had a significant interest in clearing his name from what he described as "slanderous accusations" against him. In denying the appellant's petition for expungement and sealing of the record, the trial court found no evidence of any "unusual or exceptional circumstances" as required under the analysis in *Schussheim*. Importantly, the Twelfth District, which affirmed, also noted that the appellee (the victim) had not indicated that she supported the

petition. *Id.* at ¶ 11. The same is not true herein. Appellee and K.G. clearly expressed their desire that appellant's motion be denied.

{¶32} In *Ward v. Balsley*, 2014-Ohio-4050 (5th Dist.), the trial court which denied appellant's motion to seal and expunge his record of a domestic violence civil protection order observed that appellant had been a party to five domestic violence proceedings in a period of ten months. The court wrote, "And although neither this nor the other four petitions were granted, this conduct may be relevant in future proceedings." *Id.* at ¶ 10. The appellate court agreed with the reasoning of the trial court, finding that the trial court did not abuse its discretion in finding that unique and unusual circumstances did not exist and the government's interest in maintaining the records outweighed appellant's interests. *Id.* at ¶ 11. This reasoning is equally applicable herein.

{¶33} By the time of the hearing on appellant's motion, K.G. had reached adulthood. However, given the facts of the original petition for CPO, set forth above at Paragraph Three, it appears that appellant's extreme conduct might still be relevant in any future proceedings involving K.G., his mother, and appellee. As appellee and K.G. pointed out, appellant has not expressed remorse or responsibility for prior conduct. Furthermore, the tone

and rhetoric of appellant's most recent pro se filings and attached affidavits do not help support his arguments.

{¶34} Based on the foregoing, we agree with the trial court's finding that no "unusual or exceptional circumstances exist" to support sealing the record of the CPO in this matter.  As such, we find that the trial court did not abuse its discretion.  Accordingly, the second assignment of error is also overruled.

{¶35} Having found no merit to any of appellant's assignments of error, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. and Wilkin, J., concur in Judgment and Opinion.


For the Court,


_____
Jason P. Smith
Presiding Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**